Louis Fried and Bertha Fried v. Commissioner.
Fried v. Commissioner
Docket No. 87782.
United States Tax Court
T.C. Memo 1963-9; 1963 Tax Ct. Memo LEXIS 333; 22 T.C.M. (CCH) 24; T.C.M. (RIA) 63009; January 11, 1963
*333 Jerry Sklar, Esq., for the petitioners. Arthur S. O'Neill, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioners' income tax in the respective amounts of $504.24, $432.48, and $436.10 for the years 1955, 1956, and 1957; and, for the same years, by amended answer, claims additions to tax for "negligence" under section 6653(a), I.R.C. 1954, in the respective amounts of 5 percent of the deficiencies. The issues are whether income from tips as was understated; whether the itemized deductions claimed for 1955 are permissible; and whether the additions to tax for negligence were properly determined. Findings of Fact Petitioners Louis Fried and Bertha Fried, who live at 63-61 99th Street, Forest Hills, New York, filed timely joint income tax returns for the years in question with the district director of internal revenue, Upper Manhattan, New York. Petitioner Louis Fried (hereinafter referred to as petitioner) was employed as a waiter at Lindy's Restaurant in New York City during the years 1955, 1956, and 1957. Petitioner worked 5 days a week every week, *334 excluding Friday and Sunday. Waiters at the restaurant did not pool their tips and divide them evenly. Petitioner estimated the amount of tips received by him during each year at an average of $5 to $6 a day, reporting a total of $1,050, $1,100, and $1,100 in tips for the years 1955, 1956, and 1957, respectively. For the same years, he reported salary or wages of $1,790.50, $1,780.66, and $1,828.94, respectively. Lindy's Restaurant has a very small percentage of charge customers. It has only its own charge accounts and does not accept Diner's Club or other credit cards. A charge customer generally tips higher than a cash customer. Tips at the restaurant averaged 8 percent of the sales check. Petitioner had once complained to a member of the shop committee that he did not have the same average amount of customers that other waiters had. Respondent determined petitioner's tips by applying the following formula: Sales of the restaurant were subjected to a 15 percent tip basis and such resulting figure was then divided by the total waiters' payroll to arrive at a percentage of tips to wages. These percentages were then reduced by 10 percent for tips turned over to the bus boys. *335 These figures were then reduced for several minor adjustments resulting in an even 200 percent of wages for each of the 3 years. Bar sales, for liquor served at the bar, were not eliminated in applying the original percentage formula. This was one of the reasons for reducing the percentage below the computed figure. The same formula was used in the case of every waiter at Lindy's Restaurant. Respondent did not total the sales checks of petitioner. Petitioners paid $104 a month rent in a Forest Hills apartment in 1955, 1956, and 1957. In 1955, petitioners maintained an investment of approximately $1,000 in stocks and bonds. One hundred dollars is a fair estimate of petitioner's contributions during the year 1955. During the year 1955, petitioner paid Blue Cross insurance in the sum of $90 and paid Dr. Gruber and Dr. Cali $60 and $350, respectively. Petitioner was a member of his union and paid union dues in the sum of $5 a month. He also cleaned his uniform once a week, the cost of which was at least $1 a week. Petitioner received tip income in each of the years 1955 and 1956 of not less than $1,950, and in 1957 of not less than $2,000. Petitioners did not keep books *336 and records of tips received in 1955, 1956, and 1957. Petitioners' failure to keep books and records of the tips received in 1955, 1956, and 1957 did not constitute negligence nor intentional disregard of rules and regulations. Opinion Petitioner's contention that respondent's determination was arbitrary is qualified by his concession that "in the absence of exact proof of the amount of tips actually received, the Court should apply the rule of Cohan v. Commissioner, 39 Fed. (2d) 540 * * * in order to make as close an approximation as possible." Although respondent's determination, at least in the absence of duly maintained records, is presumptively correct, it can be rebutted by evidence produced. Here, there was such evidence, sufficient in our view to shift, to some extent, to respondent the burden of going forward. Petitioner testified that he worked 5 days a week every week and received "five or six dollars in tips a day." By his own testimony petitioner consequently received a minimum of $25 a week in tips, or $1,300 a year. He reported tip income of $1,050 for 1955, $1,100 for 1956, and the same for 1957, thus concededly underreporting his tips on his own *337 estimate, even assuming the lower figure of only $5 a day. On the other hand, respondent's determination was based on the receipt of 15 percent of gross sales as tips. Four witnesses, not including petitioner, testified that the average tip was 7 to 8 percent of the bill. [1] Petitioner's wages were in the neighborhood of $1,800 a year. Using the remainder of the formula applied by respondent, this would call for somewhat more received in tips than in wages, or $1,950 to $2,000 a year. We have so found. This figure is within a few hundred dollars of the higher of petitioner's estimates. In arriving at our conclusion, we have, in accordance with the doctrine of the Cohan case, borne heavily, to the extent warranted by the evidence, against the taxpayer, who inexactitude was of his own choosing. Evidence sufficiently persuasive to sustain petitioner's burden supports the claimed deductions, as well as the payments to bus boys, *338 and other necessary expenses. As there was a basis for accepting the statements upon which petitioner relies, and no contrary evidence was produced by respondent, we have made the findings requested by petitioner, that the amounts claimed by him as deductions were actually expended. Finally, we must sustain petitioner with respect to the additions to tax for negligence. This issue was raised for the first time by respondent's amended answer. Not only does the answer pray "[that] the deficiencies in the negligence penalties for the taxable years * * * as set forth in the statutory notice be in all respects approved," but the burden of showing new matter "pleaded in his answer" was on respondent. Rule 32, Tax Court Rules of Practice. In the first place, no negligence "penalties" were "set forth in the statutory notice"; and in the second place, although ordinarily the failure to show all the facts would defeat petitioner, the burden in this case being upon respondent we cannot say that all justification for petitioner's action has been eliminated by the evidence produced. We must accordingly conclude that respondent has failed to sustain his burden in this respect. Decision will *339 be entered under Rule 50. Footnotes
1. While the witnesses in question have also had deficiencies determined against them, and have similar [*] pending in the Tax Court, we cannot assume that all would swear falsely. At least on the present record, we accept their statements as correct.↩